PAMELA (GREER) BIGGS, Plaintiff v. ROBERT GREER, III, Defendant

No. COA98-1253

(Filed 18 January 2000)

## 1. Child Support, Custory, and Visitation— support—private schooling—findings

The trial court did not err by ordering defendant in a child support action to pay one-half of his children's prospective expenses for private schooling without a finding that such costs were necessary for the children's welfare or that he had the ability to pay where the court did not deviate from the Guidelines, but adjusted the Guideline amounts to account for the extraordinary expense of private schooling. Absent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses.

## 2. Child Support, Custody, and Visitation— support—private school—tuition—retroactive

The trial court erred by ordering defendant to pay retroactive child support for private school tuition because this constituted child support reimbursement not based upon the Guidelines. In a retrospective increase of an existing child support order, the court must set out a conclusion of law that there was a substantial and material change of circumstances affecting the welfare of the child occasioned by a sudden emergency and there must be specific findings. The record in this case reflects no evidence which could support findings sustaining the conclusion that there existed a sudden and extraordinary emergency.

**BIGGS v. GREER**

[136 N.C. App. 294 (2000)]

Appeal by defendant from order entered 19 March 1998, *nunc pro tunc* 3 October 1997, by Judge Kenneth C. Titus and Judge Carolyn D. Johnson in Durham County District Court. Heard in the Court of Appeals 19 May 1999.

*Newsom, Graham, Hedrick and Kennon, P.A., by John R. Long, for plaintiff-appellee.*

*Rigsbee and Cotter, P.A., by William J. Cotter, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the trial court's order directing him to pay prospective and retroactive private school expenses. We affirm as to the former, but reverse the award of retroactive payments.

Relevant facts and procedural history include the following: Plaintiff and defendant married in 1973 and three children were born to the marriage. The parties separated on or about 17 December 1982, and Joshua and Kylah, the younger children (the children), remained in plaintiff's custody. Defendant subsequently commenced payment of child support through the Office of the Clerk of Superior Court in the amount of six hundred and twenty-five dollars ($625.00) per month.

On 29 September 1997, plaintiff filed a motion to increase defendant's child support payments, alleging increased medical and private secondary educational expenses for the children. The motion was heard before the Honorable Carolyn D. Johnson (Judge Johnson) 3 October 1997. At that time, both children attended Camelot Academy, a private secondary school, where Kylah, age seventeen, was an eleventh grader and Joshua, age nineteen, was a senior. Although Judge Johnson announced her ruling in open court following the hearing, she retired from the bench without entering a written order related thereto.

Thereafter, the Honorable Kenneth C. Titus (Judge Titus), based upon the recollections of counsel for plaintiff and defendant regarding the terms of Judge Johnson's decision, entered a written order (the Order) 19 March 1998, *nunc pro tunc* 3 October 1997. The Order included the following pertinent finding of fact:

13. The Court finds that the medical expenses and the [Camelot] school expenses are an extraordinary expense for the minor children.

The Order also contained the conclusion of law that there had been "a substantial and material change in circumstances warranting a modification of child support."

Based upon the foregoing, the trial court ordered in relevant part as follows:

2. The expenses incurred on behalf of the minor children . . . for extraordinary expenses, shall be paid at the rate of one hundred fifty dollars ($150.00) per month, thereby making the defendant's child support obligation seven hundred seventy-five dollars ($775.00) per month. However, said . . . []$150.00[] a month shall be credited to . . . extraordinary expenses, not child support.

3. The Court finds that the defendant is responsible for one-half of the educational expenses to date, and shall be responsible for one-half of the twenty-one thousand five hundred ninety-nine dollars ($21,599.00) and that ten thousand seven hundred ninety-nine dollars and fifty cents ($10,799.50) shall be paid to [plaintiff] who has paid all of said expenses.

4. Hereafter, each party shall equally be responsible for any and all school expenses relating to the minor children, and each party shall pay their share of expenses directly to . . . any school that the children are attending. . . .

Defendant timely appealed.

[1] Defendant first contends "there is no competent evidence in the record to support a finding that private school was necessary for the children's welfare." Defendant's argument presupposes that such a finding was required in order for the expense of private school to be classified as an "extraordinary expense" under the Child Support Guidelines, 1999 Ann. R. N.C. 32 (the Guidelines). We conclude defendant's first argument is unfounded.

Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a "determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Under

**BIGGS v. GREER**

[136 N.C. App. 294 (2000)]

this standard of review, the trial court's ruling "will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

Pursuant to N.C.G.S. § 50-13.4(c) (1995), a trial court is authorized to order support payments in such amount as meets the "reasonable needs of the child[ren] for health [and] education." G.S. § 50-13.4(c); *see Cauble v. Cauble*, 133 N.C. App. 390, 394, 515 S.E.2d 708, 711 (1999) ("ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the father [mother] to meet the needs") (citation omitted). To "compute the appropriate amount of child support," *Hammill v. Cusack*, 118 N.C. App. 82, 86, 453 S.E.2d 539, 542, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995) (citation omitted), the trial court must rely upon the Guidelines wherein presumptive amounts of child support are set forth, G.S. § 50-13.4(c).

If the trial court imposes the presumptive amount of child support under the Guidelines, it is

> not . . . required to take any evidence, make any findings of fact, or enter any conclusions of law "relating to the reasonable needs of the child for support and the relative ability of each parent to [pay or] provide support."

*Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991) (citing G.S. § 50-13.4(c)). However, upon a party's request that the trial court deviate from the Guidelines, G.S. § 50-13.4(c), or the court's decision on its own initiative to deviate from the presumptive amounts, *see* Child Support Guidelines ("[t]he Court may deviate from the Guidelines in cases where application would be inequitable"), the court must hear evidence and find facts related to the reasonable needs of the child for support and the parent's ability to pay, G.S. § 50-13.4(c).

Regarding treatment by the court of "extraordinary expenses," the Guidelines provide:

> F. Extraordinary Expenses. The Court may make adjustments for extraordinary expenses and order payments for such term and in such manner as the Court deems necessary. . . . Payments for such expenses shall be apportioned in the same manner as the basic child support obligation and ordered paid as the Court deems equitable.

*Other extraordinary expenses* are added to the basic child support obligation. Other extraordinary expenses include:

(1)  Any expenses for attending any special or private elementary or secondary schools to meet the particular educational needs of the child(ren). . . .

Child Support Guidelines (emphasis added).

"[D]etermination of what constitutes an extraordinary expense is . . . within the discretion of the trial court," *Mackins v. Mackins*, 114 N.C. App. 538, 549, 442 S.E.2d 352, 359, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 527 (1994). Based upon the Guideline language above, "the court may, in its discretion, make adjustments [in the Guideline amounts] for extraordinary expenses." *Id.* However, incorporation of such adjustments into a child support award does *not* constitute deviation from the Guidelines, but rather is deemed a discretionary adjustment to the presumptive amounts set forth in the Guidelines. *See* 29 Fam. L. Q. 775, 834 (1996) (citing *Mackins*, 114 N.C. App. at 548-50, 442 S.E.2d at 358-59, as holding that "court's order that defendant pay his share of costs of tutoring, orthodontics, psychologists, and summer camp was not a deviation, but rather a discretionary determination to adjust the guideline amount for extraordinary expenses"). In short, absent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses.

In the case *sub judice*, defendant does not quarrel with the trial court's determination that private school expenses for the children constituted "extraordinary expenses." However, defendant points to language in the Guidelines to the effect that ordering of private schooling as an extraordinary expense is proper when the court "deems" the expense "necessary." Defendant extrapolates from this provision a requirement that the court specifically find such costs were "*necessary* for the children's welfare." Defendant's assertion is unfounded.

Initially, as noted above, the trial court was under no obligation to render findings of fact because it did not deviate from the presumptive Guidelines, but rather adjusted the Guideline amounts to account for the extraordinary expense of private schooling. *See* G.S. § 50-13.4(c) ("[i]f the court orders an amount other than the amount determined by application of the presumptive guidelines, the court

shall make findings of fact . . . that justify varying from the guidelines and the basis for the amount ordered"), and *Mackins*, 114 N.C. App. at 549, 442 S.E.2d at 359 (extraordinary expenses considered adjustment of presumptive Guideline amounts). In addition, the record contains no request by either party for a deviation from the Guidelines. G.S. § 50-13.4(c) (*"upon request of any party* [for a deviation from the Guidelines], the Court shall . . . find the facts relating to the reasonable needs of the child . . . and the relative ability of each parent to provide support" (emphasis added)). Finally, although the trial court was not required to set forth an explicit finding of fact that it "deemed" the children's private schooling expenses "necessary," we note the court remarked during the course of the hearing that, "considering the[] [children's] age[s]," the circumstance that both were behind in school and had experienced significant health problems *"necessitated* some—some special help in order to get them through school."

In addition, defendant's assertion that the children could have received necessary credits in public school is belied by the record which reveals neither child was making progress in public school, but instead progressively falling behind. Undisputed evidence indicated both children suffered numerous medical problems, including kidney surgery, reflux and stomach problems, headaches, and appendicitis, which prevented them from attending public school regularly. Plaintiff testified the children fell "about a year-and-a-half" behind in credits and grades, and that the "public school didn't—couldn't take the time to catch them up." Plaintiff also related that a public teacher attempted to help Joshua catch up while at home sick, but the child just "kept falling further behind" and finally reached the point where he would not be able to graduate.

Plaintiff thereupon enrolled the children in Camelot Academy (Camelot), a small private school that offered "special help" and individual attention, in order for them to obtain necessary graduation credits and to prepare for college. Further, as of the date of the hearing, Joshua was expected to graduate and Kylah had one year remaining at Camelot.

In short, the trial court did not err in failing to find as fact that private school expenses were "necessary" for the children's welfare. Further, under our abuse of discretion standard, *see White*, 312 N.C. at 777, 324 S.E.2d at 833, and in light of the children's failure in public school and defendant's acknowledgment that the private school expenses constituted "extraordinary expenses" under the Guidelines,

we cannot say that the trial court's "deeming," as opposed to finding as fact, those expenses to be "necessary" for the children's welfare, Child Support Guidelines, was "manifestly unsupported by reason," *White*, 312 N.C. at 777, 324 S.E.2d at 833. Accordingly, the trial court did not err in ordering defendant to pay one-half the children's prospective expenses for private schooling at Camelot.

Defendant next contends the trial court erred by neglecting to set out specific findings of fact relating to his relative ability to pay prospective child support. Again, the trial court was not required to make findings of fact related to the children's reasonable needs or defendant's ability to pay, because the Court did not deviate from the Guidelines in ordering extraordinary expenses and no party requested a deviation. *See Brooker v. Brooker*, 133 N.C. App. 285, 290, 515 S.E.2d 234, 238 (1999) (trial court "generally not" required to make findings of fact relating to reasonable needs of child or parent's ability to pay in setting support amount; such findings required only upon a party's request for deviation, or the trial court's determination to deviate from Guidelines).

[2] In his final argument, defendant challenges the trial court's award of retroactive child support for the children's private schooling. The trial court ordered defendant to reimburse plaintiff in the amount of $10,799.50, one-half the $21,599.00 in private educational expenses incurred on behalf of the children as of the hearing date. We conclude the instant record fails to sustain the court's retroactive award of increased child support.

The distinction between two types of retroactive support is pertinent *sub judice*. In the absence of an existing child support order, "[a]n amount of child support awarded prior to the date a party files a complaint therefor is properly classified as retroactive child support . . . and is not based on the presumptive Guidelines." *State ex rel. Fisher v. Lukinoff*, 131 N.C. App. 642, 647-48, 507 S.E.2d 591, 595 (1998); *see Lawrence v. Tise*, 107 N.C. App. 140, 151, 419 S.E.2d 176, 183 (1992) (citations omitted) (absent deviation, Guidelines "conclusively presumed" to "meet the reasonable needs of the child," whereas "calculation of retroactive child support . . . focuses on the amount of monies actually expended"). Although prospective child support based upon the presumptive Guidelines requires no factual findings regarding the child's reasonable needs or the supporting parent's ability to pay, *see Brooker*, 133 N.C. App. at 290, 515 S.E.2d at 238, the trial court must set out specific findings of fact in a reimbursement award for retroactive support, *Sloan v. Sloan*, 87 N.C.

App. 392, 398, 360 S.E.2d 816, 821 (1987), so as to reflect the court's consideration of the "reasonably necessary [actual] expenditures [under G.S. § 50-13.4(c)] made on behalf of the child" as well as the "defendant's ability to pay during the period in the past for which retroactive support is sought," *Lukinoff*, 131 N.C. App. at 648, 507 S.E.2d at 596; *see Savani v. Savani*, 102 N.C. App. 496, 501-02, 403 S.E.2d 900, 903 (1991) (an award of reimbursement for past support must be supported by "specific factual findings," reflecting the trial court's consideration of "reasonably necessary" past expenditures made on behalf of the child and "defendant's ability to pay during the period in the past for which reimbursement is sought"), and *McCullough v. Johnson*, 118 N.C. App. 171, 172, 454 S.E.2d 697, 698 (1995) ("[f]indings in support of an award of retroactive child support must include the actual expenditures made on behalf of the child").

The second type of retroactive child support is that involved herein, *i.e.*, a retroactive increase in the amount provided in an *existing support order*. We note preliminarily that N.C.G.S. § 50-13.10 (1995), entitled "Past due child support vested; not subject to retroactive modification; entitled to full faith and credit," is not implicated herein. The instant case contains no allegation of past due child support under the existing order, but rather a motion to increase retroactively the child support amount provided in that order.

We reiterate that child support ordered as of the date a motion to increase is filed does not constitute retroactive support, *see Mackins*, 114 N.C. App. at 546-47, 442 S.E.2d at 357, and, if ordered in accordance with the Guidelines, requires no factual findings as to the child's reasonable needs or the supporting parent's ability to pay, *see Brooker*, 133 N.C. App. at 290, 515 S.E.2d at 238. However, child support reimbursement or child support governing a period prior to a motion to increase an existing child support order would constitute "retroactive child support and [would] not [be] based on the presumptive Guidelines." *Lukinoff*, 131 N.C. App. at 647-48, 507 S.E.2d at 595.

Motions for retroactive increases in child support orders have been accorded differing dispositions. *See* Emile F. Short, *Retrospective Increase in Allowance for Alimony, Separate Maintenance, or Support*, 52 A.L.R.3d 156 (1974). A number of jurisdictions have prohibited retroactive increases in child support orders or reimbursement for past expenditures in excess of ordered amounts, taking the view that the previous court order was "final" for the period of time

covered therein and that to allow a retroactive increase would be tantamount to setting aside the order subsequent to full performance thereof. *See, e.g., Fainberg v. Rosen*, 278 A.2d 630, 633 (Md. Ct. Spec. App. 1971), and *Adair v. Superior Court*, 33 P.2d 995, 996-97 (Ariz. 1934). However, other courts have considered retrospective increases of existing orders as justified by the broad terms and humanitarian purposes of statutes according courts the power to modify child support orders. *See, e.g., Crane v. Crane*, 170 S.W.2d 663, 665 (Tenn. Ct. App. 1942). Finally, certain courts have focused upon the child's usual status as a non-party to a support action, reasoning that the child's rights should not be measured or limited by provisions of an existing order and that the court thus retains the power to increase a previous order retroactively as the exigencies of the case may require. *See, e.g., Wilson v. Wilson*, 56 A.2d 453, 456 (Me. 1947).

Our courts have not specifically addressed the issue, but careful reading of opinions from both this Court and our Supreme Court suggests that we are not aligned with those jurisdictions mandating *absolute* prohibition of retroactive increases in child support orders. Concerning retroactive increase by court order of a child support amount agreed to by the parties in a separation agreement, our Supreme Court stated that to

> order making [an] increased [child support] allowance retroactive . . . without evidence of some emergency situation that required the [past] expenditure[s] . . . is neither warranted in law nor equity.

*Fuchs v. Fuchs*, 260 N.C. 635, 641, 133 S.E.2d 487, 492 (1963). It therefore appears that, at a minimum, we have considered "some emergency situation that required the expenditure of sums in excess," *id.*, of the existing child support obligation to be necessary. *See cf. Harris v. Harris*, 415 S.E.2d 391, 392-93 (S.C. 1992) (statute governing modification of child support orders does not bar retroactive increase of child support order under "special circumstances").

Further, this Court, in a case involving the trial court's modification of an existing order retroactive to the date of filing of the motion to increase, concluded it was unnecessary therein to determine "whether a child support payment may be increased retroactively," *Mackins*, 114 N.C. App. at 543, 442 S.E.2d at 355, but stated that

> the law seems to be that a child support payment [orders] may not be retroactively increased without evidence of some emer-

gency situation that required the expenditure of sums in excess of the amount of child support paid.

*Id.*

Lastly, in *Vincent v. Vincent*, 38 N.C. App. 580, 248 S.E.2d 410 (1978), this Court, in discussing the issue raised therein, observed that

[t]here are no North Carolina cases which directly hold that an alimony decree can be retroactively modified, although in *Fuchs* . . . , the court indicated that a retroactive increase in child support might be permitted in a sudden emergency.

*Id.* at 583, 248 S.E.2d at 412.

Construing the "indication," *id.*, in *Fuchs* together with the general principles governing modification of child support orders set forth in N.C.G.S. § 50-13.7(a) (1995) ("[a]n order . . . for support of a minor child may be modified . . . at any time, upon . . . a showing of *changed circumstances*") (emphasis added), we conclude that, as opposed to absolute prohibition, the more compelling public policy is to allow trial courts to retrospectively increase the amount of previously ordered child support. *See Ford v. Ford*, 100 Cal. Rptr. 817, 820-21 (Cal. App.3d 1972) (order increasing previous child support order so as to require payment of unanticipated medical and hospital care rendered on behalf of minor child constituted an exercise of court's reserved power to modify a child support order by reason of changed circumstances).

Notwithstanding, we emphatically caution that the trial court's authority to order such increases is strictly limited. Motions for retroactive reimbursements or increases in child support where there is an existing court order should be allowed but sparingly and only under the limited circumstance constituting a true sudden "emergency situation that required the expenditure of sums in excess," *Fuchs*, 260 N.C. at 641, 133 S.E.2d at 492, of the existing child support order.

Therefore, in the instance of a retrospective increase of an existing child support order, the trial court must set out a conclusion of law that there was a substantial and material "change[ in] circumstances," G.S. § 50-13.7, affecting the welfare of the child and occasioned by "a sudden emergency," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, so as to warrant such increase. In addition, the court's

conclusion of law must be sustained by "specific factual findings," *Savani*, 102 N.C. App. at 501-02, 403 S.E.2d at 903, based upon competent evidence, reflecting the following: 1) the actual amount disbursed by a party, *McCullough*, 118 N.C. App. at 172, 454 S.E.2d at 698, 2) within three years or less of the date of filing of the current motion, *Napowsa v. Langston*, 95 N.C. App. 14, 21, 381 S.E.2d 882, 886, *disc. review denied*, 325 N.C. 709, 388 S.E.2d 460 (1989), 3) towards reasonably necessary expenditures made on behalf of the child, *Sloan*, 87 N.C. App. at 398, 360 S.E.2d at 821, 4) in consequence of some extraordinary "sudden emergency," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, situation requiring the outlay of sums in excess of the existing amount of ordered support, *Fuchs*, 260 N.C. at 641, 133 S.E.2d at 492. In addition, the findings must reflect 5) the ability to pay of the parent subject to the motion during the period for which increased support is sought. *Savani*, 102 N.C. App. at 502, 403 S.E.2d at 903.

Upon the foregoing necessary findings and conclusion of law, an existing child support order may be increased to provide retroactive reimbursement for "sudden emergency," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, expenditures:

(1) to the extent [one parent] paid [the ot]her's share of such expenditures, and (2) to the extent the expenditures occurred three years or less before . . . the date [the parent seeking reimbursement] filed [that parent's] claim for child support.

*Napowsa*, 95 N.C. App. at 21, 381 S.E.2d at 886.

In the instant case, plaintiff tendered into evidence an "educational expenses" exhibit detailing tuition, fees, registration, tutoring and counseling costs of the children for the 1996-1997 and 1997-1998 Camelot school years. The expenses totaled $21,599.00, of which $21,199.00 had been paid solely by plaintiff. The trial court's findings denominated each child's physical and medical problems and further found that:

10. Both children have missed many days at school due to their medical problems. The children were failing in public school.

. . . .

12. The plaintiff presented a list of educational expenses for both Kylah and Joshua Greer.

Based upon its findings, the court ruled:

3. The Court finds that the defendant is responsible for one-half of the educational expenses to date, and shall be responsible for one-half of the twenty-one thousand five hundred ninety-nine dollars ($21,599.00) and that ten thousand seven hundred ninety-nine dollars and fifty cents ($10,799.50) shall be paid to [plaintiff] who has paid all of said expenses.

We assume *arguendo* that the trial court's reference to actual expenditures by plaintiff over the one and one-half year period prior to filing of her complaint, and its findings reflecting such expenses were reasonably required for the children's welfare, satisfied the actual payment by one parent, *McCullough*, 118 N.C. App. at 172, 454 at 698, within "three years or less," *Napowsa*, 95 N.C. App. at 21, 381 S.E.2d at 886, of "reasonably necessary expenditures," *Lukinoff*, 131 N.C. App. at 648, 507 S.E.2d at 595, elements of an award of retroactive child support. However, the trial court's limited findings failed to set forth the existence of a "sudden emergency," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, so unusual or extraordinary as to require plaintiff to expend sums in excess of defendant's existing support obligation. In addition, the court's order contained no findings reflective of defendant's ability to pay during the period the emergency expenses were allegedly incurred. *See Savani*, 102 N.C. App. at 501-02, 403 S.E.2d at 903, and *Tise*, 107 N.C. App. at 152, 419 S.E.2d at 184 ("[i]n determining the non-custodial parent's share of the custodial parent's reasonable actual expenditures in a retroactive support action, the trial court should consider the relative abilities of the parents to pay support (considering the estates, earnings, and the reasonable expenses of the parents) and any 'indirect support' made by either parent for the child during the period in question"(citations omitted)). The findings in the Order were thus insufficient to support the trial court's conclusion therein that "there ha[d] been a substantial and material change in circumstances warranting a modification" of the existing child support order.

In such circumstance, we have on an earlier occasion reversed the trial court's order and remanded the matter for further findings relative to retroactive child support. *See Lukinoff*, 131 N.C. App. at 649, 507 S.E.2d at 596 (matter "remand[ed] to the trial court for further findings relating to retroactive child support" where findings were "insufficient to support . . . conclusion" plaintiff should receive no reimbursement from defendant). In the case *sub judice*, however, the instant record reflects no competent evidence sufficient to support findings sustaining the conclusion of law that there

existed a "sudden," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, extraordinary emergency constituting a substantial and material "change in circumstances," G.S. § 50-13.7, affecting the welfare of the minor children.

Plaintiff presented evidence that the children were first enrolled at the Academy in the summer of 1996, and had incurred educational expenses totaling $21,599.00 as of the 1997-1998 school year. Plaintiff paid $21,199.00 of the expenses from personal accounts, but delayed approximately one and one-half years following the children's initial enrollment at the Academy before filing her 29 September 1997 motion for an increase in child support seeking retroactive reimbursement of the expenditures.

Plaintiff's lengthy and unexplained delay in filing the motion strongly signifies the absence of an "emergency situation," *Fuchs*, 260 N.C. at 641, 133 S.E.2d at 492, and, in light of the entire record, compels the conclusion that any increased need for support developed over time commensurate with the children's lack of progress in public school. In any event, plaintiff failed to offer evidence explaining why she failed or was unable to seek reimbursement immediately upon, or shortly following, the children's 1996 enrollment at the Academy. *Cf. Ford*, 100 Cal. Rptr. at 821-22 (rejecting father's suggestion that mother made no showing that appendectomy performed on minor child was of such urgency that prior court order directing payment of medical and hospital costs could not have been obtained; court noted "primary concern" was welfare of child and that it was "absurd to suggest that when the child became ill the mother should have first consulted her attorney instead of her doctor"). More significantly, all the evidence reflected said enrollment not to be in the nature of an "sudden emergency," *Vincent*, 38 N.C. App. at 583, 248 S.E.2d at 412, but rather a circumstance which developed over a period of time. We therefore decline to remand this matter for additional findings regarding the trial court's order of retroactive child support, but instead simply reverse that award.

Affirmed in part; Reversed in part.

Judges TIMMONS-GOODSON and HUNTER concur.