674 S.E.2d 248

**Ulissa HOWELL, Petitioner Below, Appellant**

v.

**John GOODE, Respondent Below, Appellee.**

**No. 34145.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 2009.

Decided Feb. 6, 2009.

Jodie K.R. Gardill, Bridge A. Remish, Mathew Irby, Legal Aid of West Virginia, Wheeling, Counsel for the Appellant.

Gary L. Rymer, Rymer & Furbee, Middlebourne, Counsel for the Appellee.

PER CURIAM.[1]

This is an appeal by Ulissa Howell (hereinafter "Appellant") from a September 24, 2007, order of the Circuit Court of Tyler County affirming an August 3, 2007, order of the Family Court of Tyler County denying the Appellant's petition to extend the child support obligations of her former husband, John Goode (hereinafter "Appellee"), during the period in which their son, R.J.,[2] remained in high school. Subsequent to thorough review of the briefs, arguments of counsel, and the record as provided to this Court, the order of the Circuit Court of Tyler County is reversed, and this case is remanded with directions to enter an order extending the Appellee's child support obligation to October 16, 2007, the date upon which R.J. attained the age of twenty.

---

1. Pursuant to administrative orders entered September 11, 2008 and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Our customary practice in cases involving minors is to refer to the parties' children by their initials rather than by their full names. *See, e.g., In re Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

## I. Factual and Procedural History

The Appellant and the Appellee were divorced on February 9, 1995, and the Appellant was granted custody of the parties' son, R.J., born October 16, 1987. The Appellee was ordered to pay child support. By order dated April 21, 2005, the child support amount was modified, and that order specified as follows with regard to child support:

Said Child Support shall continue until said child reaches the age of 18 or is sooner emancipated; provided that said Child Support shall continue after the age of 18 if said child is enrolled in high school or vocational school and making substantial progress toward a degree in said high school or vocational school; and further provided that such payments shall not extend past the child's expected graduation date of June, 2006, without further Order of this Court.

On March 29, 2006, the Appellant initiated the action currently before this Court by filing a pro se petition requesting the Family Court of Tyler County to order continued child support beyond R.J.'s eighteenth birthday. A final hearing on the Appellant's motion was conducted by the family court on May 17, 2007. The Appellant presented evidence through her own testimony and the testimony of R.J.'s special education instructor and case manager, Ms. Kimberly Gongola. The evidence indicated that R.J. had been diagnosed[3] with a learning disability, had been identified by Wetzel County Schools as disabled within the meaning of the Individuals with Disabilities Education Act (IDEA),[4] and had been receiving learning disability services since his first year in elementary school. An Individualized Education Plan (hereinafter "IEP") had been formulated for R.J., and educational goals and transition plans had been developed through the IEP Team. The evidence indicated that recent IEP goals had provided for a transition plan, including work-study programs designed to educate R.J. within the setting of local businesses, including a work-study opportunity as a statistician with a local newspaper.

The evidence further indicated that R.J. was enrolled as a full-time student at Magnolia High School in New Martinsville, Wetzel County, West Virginia, and had not yet received a diploma from any high school or vocational school. Although R.J. had completed all minimum core courses required by the State of West Virginia for graduation from high school, Ms. Gongola explained that he had not yet progressed on the goals identified by his IEP to the extent that he would be employable without significant assistance from his instructors at the high school. School administrators had determined that R.J. had not transitioned to the point where he could be gainfully employed and that additional education was necessary.[5]

The family court entered an order, dated August 3, 2007, finding that the Appellee's child support obligation concluded on May 31, 2006, noting that R.J. had completed all the minimum requirements of the State of West Virginia and Wetzel County by May 2006. The circuit court refused the Appellant's petition for appeal by order entered September 24, 2007. This Court granted the Appellant's petition for appeal on May 22, 2008. Having remained enrolled as a full-time student at Magnolia High School since the initiation of this action, R.J. reached the age of twenty of October 16, 2007, and he ultimately received his high school diploma in June 2008.

## II. Standard of Review

In establishing a standard of review for examining a lower tribunal's rulings, this Court has consistently held as follows:

---

**3.** R.J. has been diagnosed with both a learning disability and attention deficit disorder. During the hearing conducted in family court, the evidence indicated that R.J. was reading and writing on a seventh grade level. R.J. has also been diagnosed with Brachio-otorenal Syndrome and possibly Kabuki Syndrome. The latter was described in the record as a "neuromuscular disease that limits his ability to ambulate and participate in physical activities."

**4.** *See* 20 U.S.C. § 1400 et seq.

**5.** The record also includes an assessment by School Psychologist Susanne Vila, M.S., recommending that R.J. attend an additional year of high school.

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Moreover, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995); *see also* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). Based upon the guidance of these standards, we address the merits of this appeal.

### III.  Discussion

■ West Virginia Code § 48–11–103 (2002) (Repl. Vol. 2004) [6] provides that child support may be extended beyond the date upon which the child reaches the age of eighteen under certain delineated circumstances. In pertinent part, that statute provides as follows:

Upon a specific finding of good cause shown and upon findings of fact and conclusions of law in support thereof, an order for child support may provide that payments of such support continue beyond the date when the child reaches the age of eighteen, so long as the child is unmarried and residing with a parent, guardian or custodian and is enrolled as a full-time student in a secondary educational or vocational program *and making substantial*

*progress towards a diploma:* Provided, That such payments may not extend past the date that the child reaches the age of twenty.

W. Va.Code § 48–11–103(a) (emphasis supplied).

The West Virginia Legislature explained its general intent with respect to child support issues in West Virginia Code § 48–11–101(a) (2001) (Repl. Vol. 2004), as follows:

It is one of the purposes of the Legislature in enacting this chapter to improve and facilitate support enforcement efforts in this state, with the primary goal being to establish and enforce reasonable child support orders and thereby improve opportunities for children. It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care.

■ In conformity with the intent enunciated by the Legislature, this Court has succinctly stated that "[a] parent's duty to support his/her child(ren) has long been recognized to be an integral part of the rubric of parental responsibilities." *In re Stephen Tyler R.*, 213 W.Va. 725, 740, 584 S.E.2d 581, 596 (2003) "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syl. Pt. 3, in part, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). In *Carter v. Carter*, 198 W.Va. 171, 479 S.E.2d 681 (1996), this Court explained that "[a] fundamental concept in the public policy of this State is that the best interest and welfare of the children are paramount when deciding matters of visitation, child support and child custody." 198 W.Va. at 176, 479 S.E.2d at 686.[7]

---

6.  West Virginia Code § 48–11–103 was recently amended, effective June 7, 2008. The amended version, not applicable to this case, deleted the first portion of the statute, "Upon a specific finding of good cause shown and upon findings of fact and conclusions of law in support thereof, an order for child support may...." In its place, the amended version added, "An order for child support shall ...." Thus, the Legislature removed the requirement for a specific finding of

good cause and supporting findings of fact and conclusions of law.

7.  In *Leak v. Leak*, 129 N.C.App. 142, 497 S.E.2d 702 (1998), the Court of Appeals of North Carolina evaluated a similar statutory scheme, worded differently than the West Virginia statute, and explained that the purpose of the statute was "to provide continuing child support for children in school." 497 S.E.2d at 704. Specifically, the

This Court has consistently asserted that clear statutory provisions require an application by this Court which gives effect to the intent of the Legislature in enacting the statute. In syllabus two of *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951), for instance, this Court explained that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." *See also Shaffer v. Stanley*, 215 W.Va. 58, 593 S.E.2d 629 (2003); *Albright v. White*, 202 W.Va. 292, 503 S.E.2d 860 (1998); *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. Pt. 1, *Tug Valley Recovery Center, Inc. v. Mingo Co. Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979).

Syllabus point one of *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975), also asserts that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." *See also DeVane v. Kennedy*, 205 W.Va. 519, 528, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed."); Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

In the case sub judice, West Virginia Code § 48–11–103 is the governing statute, and it enumerates a very concise standard for determining whether child support may contin-

ue beyond the date upon which the child reaches the age of eighteen. The Appellee argues that R.J. does not satisfy the requirements identified in the statute because he became *eligible* to receive a diploma in May 2006, upon the completion of minimum educational requirements. The Appellee therefore concludes that the child support obligation should be discontinued at that time. The family court and circuit court agreed. The family court evaluated West Virginia Code § 48–11–103 and concluded as follows: "It does not appear the legislature contemplated extending support for an adult child who can and will graduate high school and is still potentially considering post secondary education, nor did the stature [sic] reference an 'I.E.P.' classification by a local school system as the standard of consideration."

This Court finds such conclusion untenable for two distinct reasons: first, it lacks conformity with the explicit language of the statute; and second, it disregards fundamental realities of R.J.'s education. With regard to the statutory paradigm, it is clear that child support may be ordered to continue beyond the child's eighteenth birthday when the child remains unmarried; resides with a parent, guardian or custodian; is enrolled as a full-time student in a secondary educational or vocational program; and is making substantial progress towards a diploma, with child support to be terminated no later than the child's twentieth birthday.

The Legislature did not specify that child support would cease when the child became *eligible* to receive a diploma based upon satisfactory completion of minimum educational requirements. Rather, the Legislature stated that child support could continue while the child was *making substantial progress to-*

---

North Carolina statute addresses the continuation of child support while a child remains in high school and provides that child support shall terminate when the child reaches the age of 18 except:

(1) If the child is otherwise emancipated, payments shall terminate at that time;

(2) If the child is still in primary or secondary school when the child reaches age 18, support payments shall continue until the child graduates, otherwise ceases to attend school on a

regular basis, *fails to make satisfactory academic progress towards graduation,* or reaches age 20, whichever comes first, unless the court in its discretion orders that payments cease at age 18 or prior to high school graduation. N.C.G.S.A. § 50–13.4 (emphasis supplied). The court rejected the parent's argument that child support should be discontinued based upon the allegation that the child had failed to attend school regularly and was not making sufficient progress toward graduation. 497 S.E.2d at 704.

*ward* a diploma, with a termination date no later than the child's twentieth birthday.

Second, with respect to the realities of R.J.'s education, the disabilities recognized during his elementary education were addressed through utilization of an IEP. The development and implementation of an IEP is governed by the West Virginia Board of Education, specifically Policy 2419, West Virginia 126 C.S.R. § 16. Policy 2419 requires special education to be provided in conformity with an appropriate IEP. An IEP is "essentially a written plan developed for each child with a disability that is designed to meet that child's specific educational needs." *Sturm v. Board of Educ. of Kanawha Co.*, 223 W.Va. 277, 672 S.E.2d 606 (2008) (quoting 20 U.S.C. § 1414(d)(1)(A)).

As R.J. approached the conclusion of his secondary education, his IEP Team [8] evaluated his progress and determined that R.J. required additional education designed to further the stated goals of the IEP and more effectively prepare R.J. to enter the work force and gain an ability to support himself. The determination of the educational professionals in that regard was apparently not challenged administratively or otherwise.[9]

Accordingly, R.J. was retained for additional education, and he remained in school, progressing toward his diploma, until he ultimately obtained that diploma in June 2008. Because R.J. attained the age of twenty on October 16, 2007, prior to the receipt of his diploma, West Virginia Code § 48–11–103 requires the Appellee's child support obligation to cease on that date.

### IV. Conclusion

As examined above, West Virginia Code § 48–11–103 specifies the circumstances under which child support may be extended beyond the date upon which the child reaches the age of eighteen. This Court concludes that the lower court erred in the determination that R.J. failed to satisfy the requirements of the statute. The evidence revealed that he was unmarried; residing with a parent; enrolled as a full-time student in a secondary educational program; and making substantial progress toward a diploma. Although he had satisfied the minimum requirements for graduation by May 2006, he

---

8. West Virginia Board of Education Policy 2419 requires the following with regard to the first IEP in effect when a student is sixteen years old (or sooner at the discretion of the Team):

   1. Appropriate, measurable postsecondary goals related to independent living skills, if needed;
   2. Appropriate measurable postsecondary goals based upon age-appropriate transition assessment related to training, education and employment; and
   3. Transition services (including courses of study) needed to assist the student in reaching postsecondary goals identified on the IEP.

   The goals and transition services must be updated on the IEP annually.

   The Appellee testified that he had attended at least one of the IEP Team meetings. Policy 2419 provides that the "primary purpose of an IEP Team meeting is to design an IEP that will meet the unique needs of an eligible student." A parent or adult student is given the explicit right to mediation or a due process hearing regarding the IEP Team decisions. Members of an IEP Team include parents, a general education teacher, a special education teachers, a district representative, and the student.

9. The deference to be accorded to the decisions of local educational professionals regarding policy implementation and student achievement has been consistently recognized by reviewing courts. In *Hendricks v. Sanks*, 143 N.C.App. 544, 545 S.E.2d 779 (2001), for instance, the North Carolina child support continuation statute, very similar to the West Virginia statute, was addressed within the context of a parent's claim that her son, born with Down Syndrome, was failing to make progress toward graduation while still attending high school after the age of eighteen. The Court of Appeals of North Carolina reasoned that the "key question is whether John is making satisfactory academic progress toward graduation within the meaning of N.C. Gen.Stat. § 50–13.4(c)(2)." 545 S.E.2d at 781. The court concluded that the evidence at trial indicated that "John's attendance at school is in his best interests, that he would continue to benefit in the future from the curriculum and that he is making satisfactory academic progress toward a non traditional graduation." *Id.; see also Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2nd Cir.1997) ("A court may not second-guess state educators' policy decisions in the effort to maximize a handicapped child's educational potential."); *Todd D. by Robert D. v. Andrews*, 933 F.2d 1576, 1581 (11th Cir.1991) ("the district court must pay great deference to the educators who develop the IEP."); *Jefferson Co. Bd. of Educ. v. Breen*, 853 F.2d 853, 856 (11 Cir.1988) (holding that a district court may not "substitute its own judgment on sound educational policy for those made at the state administrative level.").

was retained in high school pursuant to the education administration's decision that he required additional education in furtherance of the objectives of his IEP, and he had not yet received his diploma. Consequently, we find that R.J. was "making substantial progress towards a diploma" within the meaning of West Virginia Code § 48–11–103 until he ultimately received that diploma in June 2008. We find that the lower court abused its discretion in failing to find good cause for the continuation of the child support obligation.[10] Based upon the statutory provision for termination of child support at the age of twenty, the Appellee's child support obligation must be terminated as of R.J.'s twentieth birthday, October 16, 2007, despite the fact that R.J. had not yet received his diploma by that date.

Accordingly, the order of the Circuit Court of Tyler County is reversed, and this case is remanded with directions to enter an order extending the Appellee's child support obligation to October 16, 2007, the date upon which R.J. attained the age of twenty.

Reversed and Remanded with Directions.

---

10. Nothing in this opinion shall be construed to affect a situation in which the parties have, by agreed order, extended child support beyond the date upon which the child attains the age of eighteen.